Joseph F. X. Iacovino, J.
These four actions were tried together before the court without a jury. They present common questions of law and fact. The actions were commenced under article 15 of the Real Property Law, to compel the determination of conflicting claims to a portion of the right of way of the Lehigh Valley Railroad Company along the easterly shore of Cayuga Lake in the Town of Genoa, Cayuga County.
Plaintiffs, upland owners of property adjoining the railroad’s right of way which runs along the edge of the lake at this point, claim title to said right of way as ultimate grantees of one Daniel Valentine, the common owner of the premises. Defendants Lehigh Valley Railroad Company and Chemical Bank & Trust Company, as trustee, mortgagee, by way of affirmative defense, claim ownership under a purported conveyance from the said common grantor, and demand judgment dismissing the complaint. Although defendants make no affirmative claim for relief, they are entitled to a declaration of their interest in the premises. (Real Property Law, § 506.)
In April, 1866 Daniel Valentine acquired title to a 60-acre farm on the easterly shore of Cayuga Lake, having a lake frontage of 750 feet. In July, 1867 he executed an agreement *708 on a form supplied by defendant’s predecessor, Cayuga Lake Railroad Company. By said instrument, in consideration of $1, Valentine agreed as follows: “to grant and convey to said Company, * * * by a good and sufficient deed, all the land that said Company may require for the construction and convenient use of their Railroad * * * along the Lake shore * * * whenever said Company shall have finally built their Railroad and a deed conveying the same.” (Plaintiffs’ Exhibit 2; emphasis supplied.)
This instrument was executed by Valentine only in the presence of a subscribing witness. The back thereof bears the following legend, in an unknown hand: “ This contract is on condition that the Railroad Company shall have a Station at or near what is known as the ‘ Atwater Landing ’ for the accommodation of passengers and freight.” (Plaintiffs’ Exhibit 2.)
The subscribing witness acknowledged the instrument before a notary on October 31, 1878, and the same was recorded in the Cayuga County Clerk’s office on October 11, 1879 in Book 152 of Deeds at page 470. Valentine’s wife, if any, was not a signatory to the agreement.
Defendant Lehigh Valley Railroad Company, successor to Cayuga Lake Railroad Company, concedes that it never received a deed under the foregoing contract. Its sole claim of title is by virtue of the agreement itself.
At some date, presumably between 1867 and 1879, the Cayuga Lake Railroad Company, built a single track line across the Valentine premises at and near the east shore of Cayuga Lake.
By deed dated March 29, 1875 and recorded in the Cayuga County Clerk’s office June 1, 1875 in Book 142 of Deeds at page 473, Daniel Valentine and Polly Ann Valentine, his wife, conveyed his entire farm to one Edgar J. Lyon: “ excepting & reserving a right of way in and across the west portion of said above described premises for the Cayuga Lake Shore Railroad (so-called).”
In 1907 Lyon conveyed the farm to another; and through mesne conveyances, the premises passed to plaintiffs, present owners of lake front lots, being the premises in question. Each conveyance contained an exception as to the railroad right of way. Plaintiffs’ immediate grantor also created other exceptions involving possible use of the railroad right of way as a public or private highway which exceptions are not here material.
Seven or eight years ago, the railroad abandoned the line *709 and removed its tracks. Defendant is now entering into short-term leases for portions of its former right of way adjoining Cayuga Láke.
The railroad’s claim arises solely from the agreement executed by Daniel Valentine. The effect of that instrument and the rights acquired thereunder, and under the subsequent conveyances, is the issue litigated.
It is axiomatic that an instrument or agreement on a form supplied by one of the parties thereto must be construed against such party where questions arise as to its interpretation or effect.
The instrument executed by Daniel Valentine, above set out, was a unilateral agreement to convey land upon a condition precedent, to wit: after the company finally built its railroad. The quantity of land was in no wise specified, but was broadly described as the amount that the company “may require for the construction and convenient use of their Railroad. ’’
A unilateral agreement not binding on the proposed grantee, having no mutuality, and not specifying the land to be conveyed thereunder, is not a contract for the sale of land in the sense that it is then enforcible in equity. (Wadick v. Mace. 191 N. Y. 1.)
Neither is the agreement in question binding as a memorandum. (Cooley v. Lobdell, 153 N. Y. 596.)
The instrument was, in effect, a continuing offer by Valentine to convey to the railroad an unspecified quantity of land after the condition had been performed. In performing the condition precedent to its right to demand a deed, the railroad would of necessity have accomplished such partial performance as would take the instrument out of the Statute of Frauds. (Cooley v. Lobdell, supra.)
At some time between 1867 and 1879 the railroad presumably performed, satisfying the condition expressed in the instrument, and rendering the agreement enforcible as against the Statute of Frauds. When such performance was entered upon, the railroad had a claim under the then executory contract, enforcible in equity. (Dunckel v. Dunckel, 141 N. Y. 427; Cooley v. Lobdell, supra.)
However, prior to any steps taken to enforce the agreement, and prior to the recording thereof, Valentine and wife conveyed the entire farm to Lyon by the aforesaid deed.
It is clear that, as to record title, Lyon, Valentine’s grantee, had no knowledge of the railroad’s rights, whatever they may have been in 1875. (Shaw v. New York El. R. R. Co., 187 N. Y. 186.) The existence of track and the railroad’s possession of *710 the foreshore of the Valentine farm, if such was the case in 1875, was not inconsistent with Valentine’s record title. In the 1875 deed he excepted and" reserved a right of way for the railroad. This reservation was sufficient to explain the railroad’s possession, and placed no particular burden of inquiry on Lyon, other than an examination of the record title. Lyon’s purchase of the farm was on its face subject to the right of way expressed in his deed.
Upon the foregoing, I find that Lyon’s rights as to the fee were superior to the railroad’s, because of prior recording. (Real Property Law, § 291 and cases cited thereunder.)
Of course, the railroad could have condemned what land it needed for railroad purposes, pursuant to the then existing General Railroad Law (L. 1850, ch. 140). It did not choose to do so. Railroad corporations could acquire title in fee prior to the 1850 Law (Nicoll v. New York & Erie R. R. Co., 12 N. Y. 121) but upon the enactment of this statue were thereafter limited to take title for railroad purposes only. (New York Cent. & H. R. R. R. Co. v. Aldridge, 135 N. Y. 83; Matter of City of Buffalo, 206 N. Y. 319.) However, the question of capacity to hold and eventual limitation of the use of the railroad land is not necessary to decision of the issue before the court.
In determining that Lyon’s title is superior to defendant’s title, by virtue of priority in recording, I have not overlooked that line of cases which holds that actual possession of real estate is notice of the existence of any rights which the possessor is able to establish. (Phelan v. Brady, 119 N. Y. 587.) This authority places a duty of diligent inquiry upon a purchaser or mortgagee as to the nature of the occupant’s rights, whatever the state of the record title.
This doctrine has no application to the instant case. In addition to general disapproval of the rule by the Law Revision Commission (N. Y. Legis. Doc. 1959, No. 65 [N]), its scope has been limited in those cases where the possession is for a special purpose only, or is not inconsistent with the owner’s title. (Holland v. Brown, 140 N. Y. 344.) As to Lyon, the railroad’s possession (if it was in fact in possession in 1875, and which I have only assumed) was not necessarily inconsistent with Valentine’s title. The exception as to the railroad’s right of way in the deed to Lyon stamped the occupancy as special and not necessarily inconsistent. There is no evidence tending to show the nature or extent of the railroad’s possession in 1875, and whether the same was physically adequate to give Lyon notice of unrecorded rights. Finally, had Lyon been *711 put on notice or made inquiry as to the railroad’s claim, he would have uncovered plaintiffs’ Exhibit 2 which was subject to the limitations of enforcibility hereinabove set forth.
Defendant has cited authority tending to hold that the railroad was entitled to a conveyance upon performance of the condition, notwithstanding prior conveyances of the same premises to a third party. (Cherrington v. South Brooklyn Ry. Co., 180 App. Div. 659; Davenport v. New Jersey & N. Y. R. R. Co., 47 App. Div. 299.) These cases are clearly distinguishable; the agreements there were bilateral; possession sufficient to give notice to a purchaser was proven; the original agreements were not subject to indefiniteness as to quantity of land. The authority cited is not controlling.
For these reasons I have held that the record title must govern and that the railroad’s rights in fee are inferior to those of Lyon’s ultimate grantees. (Puglisi v. Belasky, 118 Misc. 336.)
Defendant railroad is also entitled to a declaration of its rights in the premises. The Cayuga Lake Railroad Company was, upon performance or partial performance of the stated condition, equitable owner of the right to use the strip of land occupied by it for railroad purposes. Had the railroad made timely claim against Valentine, or placed the agreement on record, its rights pursuant to the agreement might have been been enforced. Apparently, it made no such claim. Indeed, such a claim was unnecessary to operation of the line since, as aforesaid, pursuant to chapter 140 of the Laws of 1850, the railroad possessed power to condemn a right of way, or easement for railroad purposes.
In view of the reservation in the deed to Lyon, it is apparent that at least in 1875, Valentine intended to give the railroad only a right of way across his lands. The railroad needed no more. What the nature of the estate contemplated by the 1867 agreement was, does not clearly appear, but an easement was implied, and an easement was excepted from the subsequent conveyances. Whether by virtue of the foregoing, or by virtue of continued use and occupation since the 1870’s, I find that defendant has a permanent easement for railroad purposes over the described property. (See Jones v. Delaware, Lack, & W. R. R. Co., 208 N. Y. 40.)
The question of adverse possession by defendant of the fee title has not been raised as an affirmative defense, but such a plea would be unavailing in any case. The original entry by Cayuga Lake Railroad Company was- permissive, and the proof fails to show that it subsequently became hostile. And, of *712 course, there may be some question of a railroad’s capacity to hold a fee title adversely since it has been said that its lands are held for public use for railroad purposes. (New York Cent. & H. R. R. R. Co. v. Aldridge, supra; Matter of City of Buffalo, supra.)
The decision in this matter rests squarely upon the record title, and upon Valentine’s conveyance of his farm to a purchaser for value without record notice, subject to a right of way for defendant’s predecessor, prior to the obtaining by the railroad of any conveyance of the fee to it. Questions as to the effect of a subsequent breach of condition by defendant, or the nature of the railroad’s interest had it received the promised conveyance are not passed upon in view of the foregoing. (Buttery v. Rome, W. & O. R. R. Co., 47 Hun 631; Yates v. Van De Bogert, 56 N. Y. 526; Concklin v. New York Cent. & H. R. R. R. Co., 149 App. Div. 739; cf. Nichols v. Haehn, 8 A D 2d 405.)
Plaintiffs in each action are entitled to judgment declaring them to be fee owners of the premises described in their respective complaints, subject to defendant railroad’s easement for railroad purposes only over each of the parcels, as the same heretofore existed. Costs are awarded to plaintiffs in each action against defendant railroad.
The foregoing constitutes the decision of this court pursuant to section 440 of the Civil Practice Act.
Let judgment be entered in accordance herewith.